DUNNE FORD SALES, INC., Plaintiff,

v.

CONTINENTAL ASSURANCE COMPANY, Defendant.

Civ. A. No. 2758.

United States District Court
D. Rhode Island.

Aug. 29, 1963.

Abraham Belilove, Providence, R. I., for plaintiff.

John T. Keenan, of Boss, Conlan, Keenan, Bulman & Rice, Providence, R. I., for defendant.

DAY, District Judge.

This is an action wherein the plaintiff originally sought to recover the sum of $20,965, being the amount of insurance premiums paid by it to the defendant for two policies of life insurance issued by it on the life of John M. Dunne, its President and Treasurer. It contends that said amount was paid by it to the defendant upon a condition or contingency that did not occur. Subsequent to the

institution of this action, said policies were cancelled at the request of the plaintiff and the sum of $9,000, representing the cash surrender value of said policies, was paid to the plaintiff with the result that the amount now claimed by it is $11,965.

Plaintiff's complaint contains four counts. The first three counts are for money had and received by the defendant to the plaintiff's use and for "money paid on condition which condition was not fulfilled." In the fourth count the plaintiff alleges in substance that the defendant agreed to issue its policies of insurance on the life of said John M. Dunne payable upon his death to Rhode Island Hospital Trust Company as beneficiary under a certain trust agreement to be substituted for certain other policies then in effect on his life; that the plaintiff and the defendant agreed that plaintiff would issue its check to the defendant in the sum of $20,965, the amount of the premiums on said policies; that defendant agreed that "it would not negotiate, use or cash said check and that said check would not be valid unless and until the said policies of the defendant company were issued and delivered in said amount to said trust company pursuant to the terms of said agreement and that the said policies then in effect on the life of John M. Dunne which were held by said trust company under said agreement were actually cancelled and of no effect, so that the policy or policies of the Defendant would be in substitution thereof"; that defendant cashed said check and purported to issue said policies on the life of John M. Dunne "without substituting the same for the policies then deposited with said trust company and without cancelling the said policies then in effect on the life of said John M. Dunne and held by said trust company as beneficiary under said agreement" and that as a result thereof it is entitled to recover said sum paid by it as aforesaid, together with interest thereon.

During the period involved herein, the said John M. Dunne was the General Manager, President and Treasurer of the plaintiff. Under its by-laws all contracts in its behalf were to be signed by its President and Treasurer. Dunne was also the owner of one-half of the corporate stock of the plaintiff, the other half being owned by a Mrs. O'Meara. It is clear that he conducted the business affairs of the plaintiff, Mrs. O'Meara taking no active part therein.

In 1960, and for several years prior thereto, there were in existence three policies of insurance on the life of John M. Dunne, for a total amount of $500,000, which had been issued by The Mutual Benefit Life Insurance Company and Massachusetts Mutual Life Insurance Company. These policies were held by and their proceeds, upon Dunne's death, were payable to Rhode Island Hospital Trust Company as trustee under a stock purchase agreement between the plaintiff, Dunne, and Mrs. O'Meara. Under the provisions of this agreement said proceeds were to be used to retire his stock upon his death if he predeceased Mrs. O'Meara. Other policies in a like amount on the life of Mrs. O'Meara were held by said trustee, the proceeds of which were similarly to be used to retire her stock in the event that she died before Dunne. At the times involved herein, it appears that said policies on Dunne's life had a cash surrender value of approximately $150,000.

For several years prior to 1960 Dunne had known and had had business dealings with one Benjamin H. Pettis who was an agent of the Occidental Insurance Company and the manager of its office in Hartford, Connecticut. In 1958, Pettis, as agent for Occidental, had arranged for the issuance of certain policies of insurance on Dunne's life which, after their issuance, were substituted for existing policies issued by other companies that were thereafter cancelled by Dunne. Pettis had never been appointed by the defendant as its agent and had never, prior to the issuance of the policies involved herein, sold any life insurance for the defendant.

It is undisputed that commencing early in 1960, Dunne and Pettis began a series of discussions concerning the purchase by the plaintiff of new policies of insurance on the life of the former in the amount of $500,000 at lower rates of premium (term insurance) and the substitution of such policies for the policies on his life which were held by said trustee and their cancellation. Dunne desired to effect such a substitution in order to obtain the proceeds of the cash surrender value of said policies for use as working capital for the plaintiff and to reduce the amount of the premiums being paid for such life insurance. These discussions finally culminated in August, 1960 in an understanding between them that the plaintiff would purchase new policies in the amount of $500,000, and it was then contemplated by both Dunne and Pettis that such policies would be obtained from Occidental. Upon inquiry of its home office, Pettis was advised that it would not issue a policy on Dunne's life for more than $250,000. Thereupon Pettis contacted Beecher Swaim, general agent for the defendant in Hartford, Connecticut, to ascertain whether or not the defendant would issue a policy on Dunne's life in the amount of $250,000. Upon being advised that it would do so if Dunne passed the requisite physical examination, Pettis prepared and on August 23, 1960 Dunne signed applications for life insurance with each of said companies in the amount of $250,000. The answers to questions in the application addressed to the defendant were, with one exception, in the handwriting of Pettis. Although this application was unconditional in its terms, Dunne testified that it was subject to the condition that any policy or policies issued pursuant thereto would not become effective unless and until said existing policies held by said trustee were cancelled. Pettis, on the other hand, testified unequivocally that no conditions were attached to said application, that it was understood by him and Dunne that said policy or policies, if issued, would by immediately effective, that Dunne would be "covered" upon

their issuance and that they planned that thereafter they would be substituted for said existing policies which would then be cancelled. Dunne on cross-examination admitted having signed the following memorandum of his understanding with Pettis:

"TO WHOM IT MAY CONCERN:

I have at the present time, $250,-000 of insurance with Mass. Mutual and $250,000 with Mutual Benefit of New Jersey. These policies are to be dropped by me after the issue of insurance by your company on my life. It is my request that neither Mass. Mutual nor Mutual Benefit of New Jersey be informed of this action."

Subsequent to the execution of said applications, Dunne and Pettis were advised by Occidental that it was unwilling to accept Dunne's application for "income reasons" and Pettis then induced the defendant to issue its policies on Dunne's life in the amount of $500,000. Thereafter, on September 15, 1960, Beecher Swaim, the defendant's general agent, delivered two policies on Dunne's life to Pettis, pursuant to Dunne's application. Each was in the amount of $250,000. One was dated September 2, 1960, effective September 6, 1960; the other was dated September 13, 1960 and was also effective September 6, 1960. On September 15th, Pettis came to Providence and delivered said policies to Dunne. Although Dunne took possession of the policies and examined the front page of each of the policies, it is apparent that he made no study of their provisions. After giving Pettis a check in the sum of $20,965 payable to "Beecher Swaim Agency-Continental Assurance Co.", as suggested by Pettis, in payment of the total premiums provided in said policies, Dunne then returned the policies to Pettis and instructed him to deliver them to the trustee and to make arrangements for their substitution for the policies held by it. Pettis immediately delivered them to an officer of the trustee who gave him an appropriate receipt therefor, but ad-

vised him that the proposed substitution could not be made without the written consent thereto of the plaintiff, Mrs. O'Meara, and Dunne and until the named beneficiary, the plaintiff, in each of said policies was changed, and said trustee was designated as the beneficiary therein. He then returned said policies to Pettis for such change of beneficiary and advised him generally as to the terms which said consent to substitution should contain. Pettis then returned to Dunne's office, advised him of these developments and prepared a written consent to the substitution of said policies which Dunne signed. He then directed Pettis to contact Mrs. O'Meara, who lived in Hartford, to obtain her consent. Dunne admits that on this occasion he asked for and received assurances from Pettis that defendant's policies were in effect and that he was "covered". Pettis returned on the same day to Hartford and tried without success to reach Mrs. O'Meara. On the following day he delivered the plaintiff's check to a clerk in the office of the Beecher Swaim Agency, together with said policies for the changes of beneficiary therein, was paid the amount of his commissions on the sale of said policies and was given change of beneficiary forms. During the morning of September 16th, he presented the consent to substitution of policies to the husband of Mrs. O'Meara requesting him to obtain her signature thereon and was advised that she was unwilling to sign it. On the same day he came to Providence and met Dunne by accident. He informed him that O'Meara had advised him that Mrs. O'Meara was unwilling to accede to the proposed substitution of policies. On this occasion Dunne expressed his belief that he could obtain Mrs. O'Meara's consent and advised Pettis not to "worry about it". He admits that he again asked Pettis if he was "covered" by defendant's policies and received assurance that he was.

There appears to have been no further communication between Dunne and Pettis until September 19th. It is clear that early on that date O'Meara called Dunne and advised him definitely that Mrs. O'Meara would not consent to the proposed substitution. Dunne immediately called Pettis and directed him to prepare and deliver to Mrs. O'Meara a letter explaining the details and purposes of said proposed substitution, which Pettis did on the same day. He also told Pettis he was thinking of taking steps to stop the payment of the plaintiff's check until things were "straightened out". On the same day it appears that one of plaintiff's employees, at Dunne's direction by notice in writing to plaintiff's bank attempted to stop payment on said check. This written notice was received by said bank on September 20th, but after said check had been paid by said bank.

Pettis met again with Dunne on September 20th and Dunne then signed printed requests for a change of the named beneficiary in each of said policies. According to Pettis there was no mention by Dunne on this occasion of his earlier attempt to stop the payment of plaintiff's check. On the next day Pettis delivered said requests for change of beneficiary to the Beecher Swaim Agency, and on September 21st, according to Pettis, Dunne, by telephone, requested him to return plaintiff's check. He testified that he informed Dunne that he could not do so because he had delivered the check to said agency, the payee named therein. Dunne apparently expressed in somewhat vehement language his disapproval of his action, and Pettis agreed to try to effect its return but was unable to do so. Thereafter he did offer to return to said agency whatever he had left of the commissions that had been paid to him on said policies stating he did not wish to be the cause of any dissension between Dunne and Mrs. O'Meara. This offer was rejected by said Agency.

No changes of beneficiary were ever effected in said policies because of Mrs. O'Meara's refusal to sign requests therefor and said policies and requests were later returned by said agency to Pettis who then left them with O'Meara. Thereafter, plaintiff made demand upon the defendant for the refund of said sum

of $20,965 and upon its refusal by defendant the instant action was instituted.

In support of its contention that it is entitled to the recovery of said balance of the premiums paid by it, plaintiff contends that said policies of insurance issued by the defendant were never effective; that they were issued subject to the condition precedent that they would become effective and binding contracts only when they were substituted for said policies held by the trustee and when the latter were cancelled. Admittedly, such substitution did not occur nor were said policies ever cancelled.

It is well settled that parol evidence is admissible to show a condition precedent relating to the taking effect of a written contract. Such evidence is admissible to show that no binding or effective contract ever came into existence. Cimarron Insurance Company v. Pomeroy, 1956, 10 Cir., 234 F.2d 262; Henderson v. Pierson, 1954, 10 Cir., 201 F.2d 740; Del Sesto v. Turchetta, 1957, 85 R.I. 474, 133 A.2d 130; Supreme Woodworking Co., Inc. v. Zuckerberg, 1954, 82 R.I. 247, 107 A.2d 287; Allen v. Marciano, 1951, 79 R.I. 98, 84 A.2d 425. But parol evidence is not admissible to show a condition subsequent which would nullify or modify an existing agreement. 32 C.J.S. Evidence § 935; Supreme Woodworking Co., Inc. v. Zuckerberg, supra.

In the instant case the application for insurance signed by Dunne was unconditional in its terms. The policies issued by the defendant pursuant thereto were likewise unconditional in their terms as to their effective date, each becoming by its terms effective on September 6, 1960. The burden of proving the existence of a collateral agreement between the plaintiff and the defendant that said policies were to take effect at some other time or upon the happening of some contingency clearly rested upon the plaintiff. In my opinion its proof on this issue was far from sufficient. There was an irreconcilable conflict between the testimony of Dunne and Pettis on this issue. After a careful consideration of all of their testimony and the reasonable inferences to be drawn from it, I am satisfied that Dunne intended that the defendant's policies would become effective before the other existing policies on his life were cancelled. I am further satisfied that prior to September 16, 1960 he had anticipated no difficulty in securing Mrs. O'Meara's consent to the proposed substitution of said policies if and when they were issued. If he had entertained the idea that she might object thereto, it seems strange indeed that during the months of negotiations between him and Pettis he took no steps and made no effort to ascertain her sentiments with respect to his contemplated course of action. As late as September 16th, after the defendant's policies had been delivered to him and after he had received assurances that he was "covered" by them, he appears to have been confident that her consent would be obtained. And it was not until September 19th, when her husband advised him of her unequivocal refusal to approve said substitution of policies, did he take any action to undo the transaction he had consummated with the defendant. In summary, I find that the policies issued by the defendant on Dunne's life were not issued upon a condition precedent that they would become effective only when and if said policies then in effect on his life and held by said trustee were cancelled, and further find that the policies issued by the defendant were valid and binding contracts when delivered to Dunne on September 15th, and were effective on the date specified therein, to-wit, on September 6, 1960. Finding, as I do, it follows that the plaintiff is not entitled to the recovery of any of the premiums it paid for said policies.

Accordingly, judgment will be entered in favor of the defendant.