[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so claims to funds evidenced by safekeeping receipts and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company."
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including, without limitation those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)"
R.I.G.L. 8-2-11.1 provides in pertinent part that:
 "Such administrator/master may be authorized (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above a hearing was held on the above referenced claim on June 10, 1992 and June 9, 1994. At the conclusion of the hearing the parties submitted Post-Hearing Memoranda.
Mr. Bevilacqua claims an alleged deposit. Account No. 02-09-002431-3 in the amount of $90,519.43 hereinafter the "Claimed Account". The original hearing was held on June 10, 1992 and after this Court granted Receiver's motion to reopen the hearing to allow the testimony of Joseph Mollicone. Jr. a second hearing was held on June 9, 1994. At that second hearing. Claimant moved to strike the testimony of Mollicone on the grounds of collateral estoppel and/or the parol evidence rule. The Court will address these issues at the outset.
Claimant points to the Grand Jury indictment in the case of Mollicone. State of Rhode Island v. Joseph Mollicone. Jr. C.A. No. P1/92-2044A which states in pertinent part that the defendant
 at all relevant times was President and a director and agent of Heritage Loan Investment Company on diverse days and dates between January 1, 1990 through November 1, 1990. While acting as an officer agent clerk servant and employee of Heritage to whom money was entrusted for a specific purpose did embezzle and fraudulently convert to his own use and the use of others said money. . . in violation of Section 11-41-11 of the General Laws of Rhode Island. . .
As a result of this trial, Mollicone was convicted of Count IV, i.e. that he did embezzle funds from Claimants that had been deposited at Heritage. Claimant now contents that the Receiver by calling Mollicone to testify at this proceeding, is launching a collateral attack on the above referenced conviction.
However, collateral estoppel which provides that after an issue of ultimate fact has been determined by a final judgment that issue can not be re-litigated, requires that: (1) there is an identity of issues; (2) the prior proceeding resulted in final judgment on the merits; and (3) the party against whom collateral estoppel is sought is the same as or in privity with the party in the prior proceeding. State v. Chase, 588 A.2d 120 (R.I. 1991). In the case at bar, the Court finds that requirements one and three have not been met. Mollicone was convicted of embezzlement of funds of Heritage customers. In the instant case the issue is if a deposit was made with Heritage or with Mollicone. Therefore, the Receiver is not estopped from contesting the claim.
The Court will next address the parol evidence rule. Claimant argued the parol evidence rule makes Mollicone's testimony inadmissible to contradict the written passbook which is the Claimed Account because the rule bars the introduction of extrinsic evidence to change vary, or alter the written terms of an agreement, unless the evidence is offered to show fraud. mistake or a condition precedent to the existence of a contract.
However the parol evidence rule allows extrinsic evidence to supplement an agreement which is incomplete or ambiguous on its face. Here the passbook is not recorded in any other records maintained by Heritage and is in a handwritten rather than a computer generated form. Furthermore Mollicone's testimony is not offered in order to vary the terms of the agreement but rather to explain just what the agreement if any was Mollicone's testimony is an attempt to explain what in fact the document is See DunneFord Sales, Inc. v. Continental Assur. Co., 221 F. Supp. 975
(1963) Therefore the Court concludes that the parol evidence rule does not bar consideration of Mollicone's testimony.
In the case at bar. Claimants allege an initial deposit at Heritage on January 26, 1990 in the amount of $49,000 and an additional deposit of October 11, 1990 of $38,500. Unlike other claims. Claimants did sign a signature card which has been stipulated to by the parties. Claimants maintain that they, at all times, were of the opinion that they were opening an account with Heritage Loan Investment. However, no evidence of this account was entered into the computer records of Heritage.
The Receiver takes the position that the Claimed Account was opened by the Claimants with Mollicone personally and not with Heritage. In support of that position testimony was offered by Mollicone who said that the Claimants understood that he, not Heritage, would take control of the funds.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907) A passbook reflecting such a deposit is prima facie evidence of such a deposit However the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp. 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1). It must be shown that: (1) there is an unpaid balance (2) of hard earnings: (3) received or held by the bank; (4) in its usual course of business
(emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
After careful consideration of the testimony and evidence presented at the hearings the Court rejects the Receiver's contention that Claimants knew or should have known that what they were establishing was not a deposit account with a financial institution. Here, Claimants had no social or personal relationship with Mollicone they transacted their business on the premises of Heritage, they filled out signature cards and received a Heritage passbook as evidence of their deposit. Mollicone may have intended a different type of account. especially in those last days of Heritage in October of 1990, however the Court finds that Claimants were justified in believing that they had established a traditional deposit account.
Therefore, the Court finds that Claimants are entitled to a priority claim. Counsel will prepare the proper order.